IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT L. GREEN,                        )
                                        )
                Plaintiff,              )
                                        )
vs.                                     )    Case No.   13-cv-674-MJR-SCW
                                        )
JANIS CHANDLER,                         )
                                        )
                Defendants.             )

REPORT AND RECOMMENDATION

WILLIAMS, Magistrate Judge:

## I.    Introduction

This case is before the Court on Defendant Chandler's Motion for Summary Judgment (Docs. 45 and 46).  The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).   It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT** Defendant's motion for summary judgment (Doc. 45 and 46).

## II.    Findings of Fact

Plaintiff filed his Complaint against Janis Chandler alleging that she retaliated against him for filing grievances about an improper strip search by issuing him a false disciplinary ticket (Doc. 13).   Defendant Chandler subsequently filed the instant motion for summary judgment (Doc. 45 and 46) arguing that Plaintiff had failed to exhaust his administrative remedies against her.   Specifically, Defendant Chandler argued that even though Plaintiff did file a grievance as to his retaliation claim, the grievance was untimely.   The disciplinary ticket that Plaintiff alleges Chandler wrote him in retaliation for his complaints about strip searches was issued on April 26, 2012 (Doc. 46-2 at p.1).

However, the only grievance in the record regarding this disciplinary ticket was written on November 13, 2013 and received by the grievance officer on November 25, 2013 (*Id.*). The counselor and grievance officer denied the grievance as untimely (*Id.* at pp. 1-2). Plaintiff appealed the grievance to the ARB who also rejected the grievance as untimely (*Id.* at p. 4).

In response, Plaintiff states that he submitted a grievance regarding the April 26, 2012 in a timely fashion as he provided an initial grievance on the topic to his counselor on April 27, 2012. Plaintiff claims that he handed the grievance to Counselor Mark Hartman through his cell door in segregation on April 27, 2012 but that he never received a response to his grievance. When he was released from segregation in May 2012, Plaintiff alleges that Defendant then approached him in dietary and told him that "you don't want to f*ck with me." Thus, Plaintiff did not want to refile his grievance when he did not hear anything back and so he waited until November 13, 2013 to refile the grievance. Plaintiff stated that by that time he believed he would not be hindered by anyone when he refiled his grievance. Defendant Chandler filed a Reply brief arguing that there was no evidence that Plaintiff filed a grievance on April 27, 2012. Defendant Chandler pointed out that Plaintiff's counseling summary did not show a grievance filed on April 27, 2012 (Doc. 55-1) and his November 13, 2013 stated that he was "finally" writing his grievance on the false disciplinary report because he had previously been threatened by Chandler, a statement inconsistent with his argument now that he previously filed a grievance regarding the disciplinary report.

The undersigned found that the parties' briefs created a factual question as to whether Plaintiff had initially filed a grievance regarding his retaliation claim on April 27, 2012 and never received a response, thereby thwarting his efforts to exhaust his administrative remedies. In light of this issue, the undersigned held a hearing on December 8, 2014 pursuant to *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).**

At the hearing, counsel for Defendant sought to introduce an affidavit from Mark Hartman, Plaintiff's counselor in April 2012.   Plaintiff objected to the affidavit.   The undersigned sustained the objection on the grounds of hearsay and because counsel had not previously submitted the affidavit to the Court or Plaintiff.   Counsel indicated that he had only sought to obtain an affidavit from Hartman and did not ask for his availability for the *Pavey* hearing.   He also did not provide the affidavit to Plaintiff in a timely manner to allow Plaintiff time to request to cross-examine Hartman on his affidavit.   The undersigned found that the introduction of the affidavit at the hearing created undue surprise for Plaintiff.   Thus, the undersigned rejected the affidavit.

Both parties subsequently stated that they wished to rest on the arguments and evidence submitted with their briefs and the undersigned took the matter under advisement.[1]

### III.   Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." ***Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).** Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).**  That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).**   The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler,* **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson,* **362 F.3d 395, 398 (7th Cir. 2004).**

---

[1] Essentially, both parties are resting on unobjected to hearsay in the form of statements and documents filed with the Court prior to the hearing.   Fed.R.Evid. 801(c).

Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending.  *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the

time, the prison administrative rules require."  *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir.**

**2005).**   Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison

administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely

unexhausted."  *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the

defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are

to be determined by the judge.  *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).**   Thus,

where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth

the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as
> follows: (1) The district judge conducts a hearing on exhaustion and permits whatever
> discovery relating to exhaustion he deems appropriate.  (2) If the judge determines
> that the prisoner did not exhaust his administrative remedies, the judge will then
> determine whether (a) the plaintiff has failed to exhaust his administrative remedies,
> and so he must go back and exhaust; (b) or, although he has no unexhausted
> administrative remedies, the failure to exhaust was innocent (as where prison officials
> prevent a prisoner from exhausting his remedies), and so he must be given another
> chance to exhaust (provided that there exist remedies that he will be permitted by the
> prison authorities to exhaust, so that he's not just being given a runaround); or (c) the
> failure to exhaust was the prisoner's fault, in which event the case is over.   (3)If and
> when the judge determines that the prisoner has properly exhausted his administrative
> remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the
> merits; and if there is a jury trial, the jury will make all necessary findings of fact
> without being bound by (or even informed of) any of the findings made by the district
> judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.**

A.      **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was

required to follow the regulations contained in the Illinois Department of Correction's Grievance

Procedures for Offenders ("grievance procedures") to properly exhaust his claims.   **20 Ill. Administrative Code §504.800 *et seq.*** The grievance procedures first require inmates to speak with the counselor about their complaint.   **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.   *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.  The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances."   **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB").   The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.   Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached."   **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations."   **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.  The offender shall be sent a copy of the Director's

decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance.   In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis.  **20 Ill. Admin. Code §504.840(a).**  If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance.    **20 Ill. Admin. Code §504.840(b).**     Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis.  **20 Ill. Admin. Code §504.850(g).**

B.      Analysis

Here, the undersigned finds that Plaintiff failed to exhaust his administrative remedies against Defendant Chandler.  The only grievance in the record filed by Plaintiff was written on November 13, 2013 (Doc. 46-2 at pp. 1-2).  This grievance was written over a year after the disciplinary report issued on April 26, 2012 and five months after Plaintiff filed his Complaint on June 19, 2013.[2]  The grievance was rejected as untimely at both the institutional and administrative level (Doc. 46-2 at pp. 1-4).   Thus, Plaintiff did not exhaust his administrative remedies with his grievance as it was filed outside of the time frame for filing grievances and after Plaintiff filed his Complaint. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004);** *Perez v. Wisconsin Dep't of Corr.*, **182 F.3d 532, 535 (7th Cir. 1999).**

Plaintiff, however, argues that he properly exhausted his administrative remedies

---

[2] The allegations against Chandler were initially filed in Case No. 13-cv-587 on June 19, 2013 but were severed into the present case on July 15, 2013 (Docs. 1 and 2).

because he filed a timely grievance on April 27, 2012 but never received a response to the grievance. If true, Plaintiff would be deemed to have properly exhausted his retaliation claim because his efforts to properly exhaust would be deemed thwarted.  *See Walker v. Sheahan*, **526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at \*3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting** *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)).** In reviewing this issue, the undersigned will consider all of the evidence in the record, including grievances and grievance logs despite their potential hearsay issues.[3]   The undersigned finds that the evidence before it shows that Plaintiff did not exhaust his administrative remedies in a timely fashion.

While Plaintiff argues that he filed a grievance on April 27, 2012, that proposition is contradicted by the evidence in the record.     Plaintiff claims that he submitted his grievance to Mark Hartman on April 27, 2012 by handing the grievance through his cell door in segregation, but a review of the cumulative counseling summary shows no entry for the grievance.   The summary indicates that Mark Hartman did in fact meet with Plaintiff on April 27, 2012 and gave him a DCA form (Doc. 55-1 at p. 3).   While there is no indication in the record what a DCA form is, nor have the parties provided such an identification, it is clear to the undersigned that it was not a grievance.   In fact, Harman noted

---

[3]  Although the undersigned rejected Defendant's proffered affidavit from counselor Mark Hartman on the grounds of hearsay, the undersigned found multiple issues with the affidavit including the fact that it was untimely, presented undue surprise to Plaintiff, and did not provide Plaintiff with an opportunity to cross-examine the witness.   The other evidence the undersigned will consider has no such additional problems as the evidence was already in the record and Plaintiff had ample time to review and respond to the evidence.   Additionally, neither side objected to the Court's consideration of the evidence already submitted.

on May 4, 2012, that he received a grievance from Plaintiff regarding the improper strip search and in that entry he marked "received grievance".  No such similar entry was written on April 27, 2012, indicating that no grievance was received on that date.

The cumulative counseling summary further evidences that Plaintiff did not file a grievance on April 27, 2012 because it shows he did not later inquire about the status of that grievance. The counseling summary indicates that on July 26, 2012, Plaintiff inquired about the status of his grievance regarding the strip search (Doc. 55-1 at p. 2).  The grievance officer indicated that the grievance would be returned through the institutional mail that evening.  However, there is no indication in the summary that Plaintiff inquired about the status of his April 27, 2012 grievance on July 26, 2012 or any other date.   If Plaintiff had filed his April 27, 2012 grievance, it is logical that he would also have inquired about that grievance when he inquired about his April 25, 2012 grievance, yet he did not do so.   Nor did he inquire about the status of the grievance on any subsequent date, even though he had not received a response to the grievance.   This indicates that Plaintiff most likely did not file a grievance because he never inquired about its status when he has inquired about the status of other pending grievances.

Plaintiff subsequently filed a grievance about Chandler's retaliation on November 13, 2013.   Both the timing and the substance of that grievance suggests that no earlier grievance existed. In the summary of Plaintiff's grievance, Plaintiff indicates that he is "finally [writing] on the false IDR of 4/26/2012.   I am so late with filing this grievance because I was threaten by this Dietary Supervisor Ms. Chandler…"   Plaintiff indicates that he is *finally* writing this grievance and acknowledges that he is filing it late.   He does not mention that he filed the grievance originally on April 27, 2012 or that there were any earlier grievances dealing with this issue.   Instead, Plaintiff's statements suggest that this grievance is the first time he is writing about this complaint.   There is no indication of an earlier

grievance.   Further, Plaintiff filed the November 13, 2013 grievance after he filed his Complaint.   In fact it was filed five months after he filed his Complaint and after the case went through its § 1915A review and requests for waivers of service went out.   Only then did Plaintiff file his grievance stating that he was *finally* grieving his complaint.   The timing of his grievance suggests to the undersigned that Plaintiff did not file an earlier grievance, but instead realized after filing his Complaint that he his claims had not been exhausted and sought to remedy that mistake by filing a grievance at that time. Both the timing and the text of the November 13, 2013 indicate to the undersigned that this was the first grievance Plaintiff filed on his retaliation claim and that no grievance was filed on April 27, 2012 as he now suggests.   Additionally, given the fact that Plaintiff found no impediment to suing the defendant in June of 2013, the Court finds Plaintiff's claim that he waited until November 2013 to file a grievance out of fear to be less than credible.

Thus, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies.   The record indicates that Plaintiff did not seek to timely exhaust his administrative remedies as he alleges.   There is no evidence that he filed a grievance regarding Chandler's retaliation on April 27, 2012.   The counseling summary is completely absent of any entry indicating that such a grievance was received, when other grievances and conversations were docketed, and there is no evidence that Plaintiff inquired about this grievance when he had inquired about other grievances.   Further, the filing of the November 13, 2013 with an indication by Plaintiff that he was finally filing the grievance demonstrates to the undersigned that Plaintiff had not filed a previous grievance on this topic.   As such, the undersigned **RECOMMENDS** that the Court **FIND** that Defendant Chandler is entitled to summary judgment on Plaintiff's claim.

### IV.    Conclusion and Recommendation

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff

has failed to timely exhaust his administrative remedies on his retaliation claim against Defendant Chandler, **GRANT** Defendant Chandler's motion for summary judgment (Docs. 45 and 46) and **DISMISS** Plaintiff's retaliation claim against Defendant Chandler **without prejudice**.   Should the Court adopt this Report and Recommendation, no further claims will remain for trial.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals**.   *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).**   Accordingly, Objections to this Report and Recommendation must be filed on or before **December 29, 2014**.

**IT IS SO ORDERED**.
DATED: December 10, 2014.

/s/ Stephen C. Williams
STEPHEN C. WILLIAMS
United States Magistrate Judge